# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| GERALD A. SANFORD, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 19-1139-JDT-cgc |
| | ) |
| CORECIVIC, ET AL., | ) |
| | ) |
| Defendants. | ) |

## ORDER SEVERING CLAIMS, PARTIALLY DISMISSING COMPLAINT AND DIRECTING CLERK TO ISSUE A THIRD-PARTY SUBPOENA

On June 28, 2019, Plaintiff Gerald A. Sanford, Sr., who is incarcerated at the South Central Correctional Facility in Clifton, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis* in the U.S. District Court for the Middle District of Tennessee. (ECF Nos. 1 & 2.) Sanford's complaint concerns events that allegedly occurred while he was incarcerated at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. (ECF No. 1 at 2.) United States District Judge William L. Campbell, Jr., granted the motion to proceed *in forma pauperis*, assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b), and transferred Sanford's case to this Court. (ECF No. 9.) Sanford also filed motions for service on the Defendants, to set a hearing on the motion, and for a preliminary injunction or temporary restraining order. (ECF Nos. 3, 4, 5, 13, 14.) On October 2, 2019, this Court denied those motions and directed the Clerk to modify the docket with Sanford's correct location. (ECF No. 15.)

Sanford initially sued only CoreCivic and Correctional Officer Aaron Ivey, asserting claims of excessive force and denial of due process. (ECF No. 1 at 4-7.) On August 21, 2019, Sanford filed an amended complaint restating the allegations and claims in the original complaint, (ECF No. 12 at 1-8, 19-28), and joining additional Defendants Margaret Armour, Helen Colby, Linda Green, LaToya Jackson, John Johnson, and Joseph Medina. Sanford alleges these new Defendants denied him access to the law library, denied him access to the courts, and unlawfully retaliated against him. (*Id.* at 8-19, 28-30).

The proper joinder of parties in a single lawsuit is governed by Federal Rule of Civil Procedure 20.[1] Rule 20(a)(2) governs the joinder of Defendants and provides that multiple Defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all Defendants will arise in the action.

The Seventh Circuit has cogently explained how Rule 20(a)(2) applies to prisoner plaintiffs:

> [M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different Defendants belong in different suits, not only to prevent the sort of morass that this [multi]-claim, [multi]-Defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeal that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g). . . .
>
> . . . .
>
> . . . . A buckshot complaint that would be rejected if filed by a free person— say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched

---

[1] Once it is determined whether the parties in a case are properly joined under Rule 20, the joinder of multiple claims against any particular party is governed by Rule 18(a), which provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

2

him, D failed to pay a debt, and E infringed his copyright, all in different transactions–should be rejected if filed by a prisoner. . . .

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Dykes v. Benson*, No. 1:18-cv-664, 2018 WL 3708054, at *4 (W.D. Mich. Aug. 2, 2018) ("Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.").

The new claims in the amended complaint are misjoined in this action because they are completely unrelated to the claims in Sanford's initial complaint and seek relief against entirely unrelated Defendants. However, Federal Rule of Civil Procedure 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

The Court finds that severing the additional claims raised in the amended complaint against Defendants Armour, Colby, Green, Jackson, Johnson, and Medina and opening them as a new action is the appropriate remedy for the misjoinder. The initial complaint, (ECF No. 1), is the only operative complaint in this case, number 19-1139.[2] The Clerk shall record the Defendants as CoreCivic and Correctional Officer Aaron Ivey.

Sanford alleges that on June 18, 2018, he was ordered to report to work in HCCF's kitchen. (ECF No. 1 at 2.) When his cell door did not open, he pushed the call button to request his release to go to the kitchen on time. (*Id.* at 3.) Sanford heard only static as a response and told the officers on the other end that he could not hear them. (*Id.*) He eventually told them to open his door if he could hear them, and his door was opened. (*Id.*) Sanford went to the control booth to tell the officers that he could not hear them in his cell. (*Id.*) Defendant Ivey was on duty and told Sanford,

---

[2] There are no material differences between the original and amended complaints with regard to the allegations and claims against Defendants CoreCivic and Ivey.

3

"Every time I work over here you got a problem." (*Id.*) Sanford insisted Ivey was thinking of someone else, but Ivey began to swear at Sanford, telling him, "Yo b---h a-- want a problem, you gon' get one today." (*Id.*) Sanford allegedly said nothing and left for the kitchen. (*Id.*)

As Sanford walked down the hallway to the kitchen, he heard a door close behind him. (*Id.* at 3-4.) He then heard a male voice yelling obscenities at him and turned around to see Defendant Ivey coming quickly towards him. (*Id.* at 4.) Sanford "was forced to take a defensive stance because it appeared [Ivey] was coming to have a physical altercation." (*Id.*) Ivey said to Sanford, ""I told yo b---h a-- you was gon' have a problem." (*Id.*) Sanford asked Ivey what was wrong, and Ivey responded by pulling out his CO2 spray, a chemical agent. (*Id.*) Sanford cried out, "Don't spray me!", but Ivey still sprayed Sanford with the CO2. (*Id.*) Sanford attempted to dodge the blast, but the CO2 covered his forearms and the left side of his face and head. (*Id.*) Ivey then turned and left the hallway. (*Id.*)

Other officers witnessed the incident, tended to Sanford, and took him for medical treatment. (*Id.* at 4-5.) A nurse at the infirmary "filled out and signed an excessive force medical form and had Plaintiff sign it." (*Id.* at 5.) A captain later arrived, photographed Sanford's face, and took him to administrative segregation "Pending Investigation" of the incident. (*Id.*) While Sanford was in segregation, another captain allegedly told him he had "watched the incident on camera and the incident should not have happened and Plaintiff should not be in Segregation." (*Id.*)

Sanford alleges he had to wait in segregation for thirty-six hours before being allowed to shower. (*Id.*) He rinsed the CO2 spray out of his hair, which mixed with water from the shower and "severely" burned his eyes. (*Id.*) Sanford alleges that he spent a total of sixty-one hours, about

4

two and a half days, in segregation. (*Id.*) His face and arms continued to burn for days after the incident. (*Id.* at 6.) He was given ointment and eyedrops for the burning. (*Id.*)

Sanford alleges that Defendant Ivey was later fired from his position at HCCF because of his actions. (*Id.*) Sanford grieved the incident and appealed the response telling him the matter was being investigated. (*Id.*) Sanford was granted a grievance hearing, but the Hearing Board recommended no further action because Ivey had been fired. (*Id.*) Sanford again appealed, but his appeal was denied. (*Id.* at 6-7.)

Sanford seeks compensatory and punitive damages. (*Id.* at 22-23.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make

5

a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Sanford filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Sanford does not state a claim against CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26

F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018).  Under the principles of municipal liability, CoreCivic, although a "person" for the purposes of § 1983, is not "liable for every misdeed of [its] employees and agents." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir. 1993).  To prevail on a § 1983 claim against CoreCivic, Sanford "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

Sanford has not alleged that a policy or custom of CoreCivic was the "moving force" behind Defendant Ivey's attack.  In fact, Sanford alleges that CoreCivic had a policy against "abusive or undue negative treatment of residents."  (ECF No. 1 a PageID 11.)  He alleges that CoreCivic should be held liable because Ivey violated "CoreCivic's Code Of Ethics and Business Conduct Facility Employee Supplement."  (*Id.* at PageID 15.)  Violation of a prison rule or regulation does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).  Sanford therefore cannot hold CoreCivic liable for Ivey's alleged violation of its rules and policies.

Sanford also seeks to hold CoreCivic liable for breach of contract.  (*Id.* at PageID 11-12.)  CoreCivic, however, had no contractual obligation to Sanford.  CoreCivic operates HCCF under contract with the Hardeman County Correctional Facilities Corporation.[3]  Moreover, no constitutional provision provides a basis for Sanford to recover damages against CoreCivic for breach of a contract or other state-law violations. *See Jordan v. Brown*, No. 1:16-CV-0001, 2016 WL 128520, at *2 (M.D. Tenn. Jan. 12, 2016) (citing *Taylor v. Aramark Corr. Servs., Inc.*, No.

---

[3] *See* https://www.tn.gov/correction/sp/state-prison-list/hardeman-county-correctional-facility.html.

1:15-cv-927, 2015 WL 9127365 (W.D. Mich. Dec. 16, 2015)); *see also Laney*, 501 F.3d at 581 n.2 ("Allegations of state law or state constitutional violations will not support a § 1983 claim.").

Sanford also asserts that CoreCivic should have taken disciplinary action "to curb the known pattern of emotional and physical abuse of Plaintiff by the Defendants [sic]." (ECF No. 1 at PageID 13.) Sanford, however, alleges only one incident of physical harm by Ivey. He does not allege any pattern of emotional or physical abuse by Ivey or any other HCCF employee.

Sanford's allegations against Defendant Ivey amount to a claim of excessive force. The Eighth Amendment protects a convicted inmate from cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Establishing an Eighth Amendment claim of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6 (citing *Whitley*, 475 U.S. at 320-21).

Sanford alleges that Ivey sprayed him with chemical agent $CO_2$ without any reason to do so. Although Sanford alleges that he had taken a defensive stance at the time, he does not allege any provocation or reason for Ivey to use $CO_2$ on Sanford. Spraying a prisoner with a chemical agent without any reason to do so amounts to unnecessary, excessive force. *See Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (holding that sergeant's use of a chemical agent on sleeping prisoner was excessive because "it was not necessary in order to restore order and since

'less intrusive means' could have been used" to wake prisoner); *Williams v. Curtin*, 631 F.3d at 384 (holding that prisoner stated a claim of excessive force based on allegations "that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him"). Sanford has sufficiently alleged an Eighth Amendment claim of excessive force against Defendant Ivey.

Sanford also asserts the sixty-one hours he spent in administrative segregation violated his Fourteenth Amendment right to due process. However, his allegations fail to state such a claim. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). A prison restriction does not give rise to a protected liberty interest unless the restriction imposed constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to administrative segregation generally does not constitute an atypical and significant hardship in the context of prison life. *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).

Sanford alleges that he was held in administrative segregation for approximately two and a half days (sixty-one hours) while prison officials investigated Ivey's assault on him. That brief detention does not constitute an atypical and significant hardship. Sanford therefore has no protected liberty interest requiring due-process protections, and he fails to state a Fourteenth Amendment claim.

To the extent Sanford seeks to raise a claim about the grievance procedures, he also fails to state a claim. "There is no inherent constitutional right to an effective prison grievance

procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. *Id.* Nor does the denial of an administrative appeal constitute a basis for a § 1983 claim. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

In conclusion, the new claims in the amended complaint against Defendants Margaret Armour, Helen Colby, Linda Green, LaToya Jackson, John Johnson, and Joseph Medina are hereby SEVERED from this case. The Clerk is DIRECTED to open a new civil case for those claims and to docket in that new case copies of the amended complaint, (ECF No. 12), Sanford's motion to proceed *in forma pauperis*, (ECF No. 2), the order from the Middle District of Tennessee granting that motion, (ECF No. 9), and this order. A further order concerning those claims will be issued after the new case is opened.

The Court DISMISSES Sanford's claims against CoreCivic for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Sanford's Eighth Amendment excessive force claim will proceed against Defendant Aaron Ivey in his individual capacity.

Though Sanford has stated a valid claim against Defendant Ivey, process cannot be issued at this time. The complaint indicates that Ivey is no longer employed at the HCCF, (ECF No. 1 at 6-7), and Sanford does not provide information about Ivey's current location or employer. As Sanford remains incarcerated, he cannot reasonably be expected to obtain that information.

Therefore, it is the Court's responsibility to ensure that process is served, if possible. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

The Clerk is DIRECTED to issue a third-party subpoena for CoreCivic and deliver it to the U.S. Marshal for service, along with a copy of this order. The subpoena shall direct CoreCivic, 10 Burton Hills Blvd., Nashville, TN 37215, to provide to the Court, within 30 days after service of the subpoena, either the last known home address and telephone number or the current place of employment of Aaron Ivey, who was employed as a correctional officer at the Hardeman County Correctional Facility on June 18, 2018.

Due to security and privacy concerns, any information provided by CoreCivic in compliance with the subpoena shall not be made available to Plaintiff, but shall be filed by the Clerk *ex parte* and under seal. If CoreCivic provides sufficient information regarding Defendant Ivey's present location, the Clerk shall issue process and deliver it to the Marshal for service.
IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE