# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

GERALD A. SANFORD, SR.,           )
                                  )
        Plaintiff,                )
                                  )
VS.                               )          No. 19-1270-JDT-cgc
                                  )
MARGARET ARMOUR, ET AL.,          )
                                  )
        Defendants.               )

## ORDER GRANTING PENDING MOTIONS, DISMISSING COMPLAINT
## AND GRANTING LEAVE TO AMEND

On June 28, 2019, Plaintiff Gerald Sanford, who is incarcerated at the South Central Correctional Facility (SCCF) in Clifton, Tennessee, filed a *pro se* complaint under 42 U.S.C. § 1983 in the U.S. District Court for the Middle District of Tennessee. United States District Judge William L. Campbell, Jr., granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b), then transferred the matter to this district, where venue is proper; the case was opened here as case number 19-1139-JDT-cgc. (Case No. 19-1139, ECF No. 9.)

Sanford filed an amended and supplemental complaint on August 21, 2019, asserting new claims against six new Defendants that were unrelated to the claims in his original complaint. On November 18, 2019, the Court issued an order that, *inter alia*, severed the new claims and Defendants, (ECF No. 5); those new claims were opened in this separate case, number 19-1270-JDT-cgc. The "amended" complaint filed August 21, 2019, therefore is the current operative pleading in this case. Sanford's claims concern events that occurred during his previous

incarceration at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. He sues Food Stewards Margaret Armour, Helen Colby, Linda Green, and LaToya Jackson; Food Service Director Joseph Medina; and Librarian John Johnson. Each Defendant is sued in his or her individual capacity.

On December 20, 2019, and March 4, 2020, Sanford filed identical motions to clarify the address where all of the Defendants may be served. (ECF Nos. 6 & 7.) Those motions are GRANTED. Sanford also filed a motion for status, asking whether the August 2019 amended complaint had been filed and whether the Defendants have been served. (ECF No. 8.) That motion also is GRANTED. As stated above, the August 2019 complaint was filed; however, no Defendants have been served because the complaint is being dismissed.

Sanford argues that the Defendants: (1) unconstitutionally denied him access to the courts by restricting access to the HCCF law library and/or his inmate legal advisor and also denied him the ability to act as a "jailhouse lawyer" for other inmates; (2) confiscated discs containing legal information that had been mailed to Plaintiff; (3) issued false disciplinary reports against him; (4) unconstitutionally retaliated against him for filing grievances and a Title VI complaint; (5) denied him assistance and schedule accommodations in performing his prison kitchen job and forced him to work an excessive number of hours; (6) verbally abused him; (7) denied and/or withheld his prison job pay; (8) failed to correct HCCF personnel regarding their treatment of Sanford; (9) mishandled Sanford's prison grievances; (10) violated various policies of the Tennessee Department of Correction (TDOC) and the Tennessee Code; and (11) wrongfully transferred him from HCCF to SCCF, with loss of a portion of his HCCF prison job pay. (*See* ECF No. 1 at PageID 8-23, 32-34.) Sanford seeks compensatory and punitive damages, attorney fees, and costs. (*Id.* at

PageID 42-43.)  He further asks to "be free from all retaliatory acts, incidents, and treatments." (*Id*. at PageID 43.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.  8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011)

(affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements"

and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'"

(quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Sanford filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights

secured by the "Constitution and laws" of the United States (2) committed by a defendant acting

under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  For the reasons

explained below, Sanford's complaint fails to state a claim on which relief may be granted.

*(1) Access to the courts*:  Sanford alleges Defendants Johnson and Medina interfered with

his access to the HCCF prison law library.  Johnson allegedly provided Sanford with library passes

only during the time slot allotted for Sanford's unit rather than during the times Sanford was

personally available.  Specifically, Sanford argues Johnson should have given him library passes

whenever Sanford was not working at his prison job in the HCCF kitchen.  He contends Johnson's

library pass restrictions interfered with Sanford's "jailhouse lawyer duties" to provide "legal

advice and counseling to fellow Prisoners." (ECF No. 1 at PageID 8; *see also id.* at PageID 10-11

(claiming denial of library access on June 3, June 5, and July 15, 2019).)  Sanford also alleges

Johnson denied him library access even when he had a pass and effectively denied Sanford "access

to the six computers allotted for population Inmates," (*id.* at PageID 9).

4

Sanford further alleges that Defendant Medina "attempted to refuse Plaintiff access to the law library" on July 12, 2019, following a dispute about Sanford's prison job shift reassignments, his supposed work-pay shortfall, and his filed grievances. (*Id*. at PageID 17-18.)  Additionally, Defendants Medina and Armour allegedly reassigned his kitchen work hours in July 2019, supposedly because he "refused to food prep" during a shift.  Sanford contends the reassignment denied him access to his inmate legal advisor and injured his ability to comply with unspecified "statutory and/or Court-imposed deadlines," thus denying him access to the courts. (*Id.* at PageID 17.)

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977).  This fundamental constitutional right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828; *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 395-96 (6th Cir. 1999) (en banc) (a prisoner may have a constitutional right to inmate legal advisor if necessary to vindicate his right of access to the courts).  However, an inmate does not have "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996).  The touchstone is the *meaningful* access to the courts. *Bounds,* 430 U.S. at 823 (emphasis added).  The Supreme Court has stated: "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351.

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355 (emphasis in original).

Rather, for a claim of interference with access to courts, an inmate must allege "actual injury." *Id.* at 349. That is, the prisoner must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353. *See also Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) ( a plaintiff must "show that the defendants have scuttled his pursuit of a 'nonfrivolous, arguable' claim"); *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (a prisoner must show that "prison officials' conduct . . . hindered his efforts to pursue a nonfrivolous legal claim"). The Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Sanford's contentions do not satisfy this constitutional showing. Mere allegations of inconvenient library and computer access times (such as Sanford alleges against Johnson), or contentions that someone "attempted" to refuse him library access (such as Sanford asserts against Medina), do not demonstrate frustration of a nonfrivolous legal claim. In fact, Sanford does not identify, in the first instance, any particular legal claim that he was supposedly pursuing at the subject times. Nor, for that matter, has he shown pursuit of one that was non-frivolous. Sanford also does not allege that he was unable to research and prepare a non-frivolous legal claim on his own without the assistance of an inmate legal advisor. Indeed, such a contention would seem to contradict his allegation that *he* was a jailhouse lawyer assisting *others*.

6

As to Sanford's contention that Johnson's library pass restrictions interfered with those "jailhouse lawyer duties," his argument does not state a claim warranting relief.  "[A]n inmate does not have an independent right to help other prisoners with their legal claims.  Rather, a 'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts." *Thaddeus-X*, 175 F.3d at 395.  *See also Evans v. Vinson*,  427 F. App'x 437, 445 (6th Cir. 2011) ("there is no constitutional right to assist other prisoners with legal matters").  Accordingly, "only if [a plaintiff's] assistance is necessary to vindicate [a fellow inmate's] right of access to the courts can [a plaintiff] . . . state a claim of retaliation." *Thaddeus-X*, 175 F.3d at 395.  "[O]ne inmate assisting another 'is protected . . . when the inmate receiving the assistance would otherwise be unable to pursue legal redress.'"  *Berkshire v. Beauvais*, 928 F.3d 520, 533 (6th Cir. 2019) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).  Sanford has not even suggested, much less shown, that his assistance as a jailhouse lawyer was necessary to vindicate a particular fellow inmate's specific legal claim.

For all these reasons, Sanford fails to state a colorable claim for denial of access to the courts or denial of the right to be an inmate legal advisor.

*(2) Confiscation of discs mailed to Sanford*:  Sanford alleges that Defendant Johnson confiscated and retained two "legal CD dis[c]s" containing legal work that had been mailed to Sanford from the SCCF.  (ECF No. 1 at PageID 10.)  He states that he lacked access to the discs when Johnson was absent from work and was thus "unable to work on a particular matter which had a deadline."  (*Id*.)  At some unspecified later time, Sanford apparently discovered the discs had been erased and informed other HCCF officials, including Principal Turner and Assistant Principal McDuffie.  (*Id.*)  Sanford does not actually allege that he accused Johnson of erasing the discs.  He alleges only that when Turner and McDuffie "confronted" Johnson about the matter,

Johnson "declared Plaintiff had erased his own legal dis[c]s." (*Id.*) Johnson also denied previously threatening to erase Sanford's file from the institutional hard drive, even though other library workers stated they heard Johnson do so. (*Id.*)

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003) (citing *Knop v. Johnson,* 977 F.2d 996, 1012 (6th Cir. 1992). As the Sixth Circuit has noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Lavado v. Keohane,* 992 F.2d 601, 607 (6th Cir. 1993). However, "prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights." *Sallier*, 343 F.3d at 873-74 (citing *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir. 1986)).

A prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, "especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier*, 343 F.3d at 873-74 (citing *Kensu v. Haigh,* 87 F.3d 172, 174 (6th Cir. 1996). "In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open 'legal mail' and inspect it for contraband in the presence of the prisoner." *Sallier*, 343 F.3d at 873-74 (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)). "Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney." *Sallier*, 343 F.3d at 874. When it does, courts "must

balance the interest of prison security against the possibility of tampering that could unjustifiably chill the prisoner's right of access to the courts or impair the right to be represented by counsel." *Id*. A prisoner can request that constitutionally protected mail be opened (although not read) in his presence, where prison officials have security concerns warranting inspection for contraband. *Id*.

Sanford does not allege that Johnson in fact read the information on the discs. He does not even allege Johnson was the person who erased the discs, though he appears to assume that was the case. Sanford vaguely claims the discs were "legal CD dis[c]s," (ECF No. 1 at PageID 10), but he does not allege any details about what the discs contained or that the loss of the information rendered him unable to timely assert any nonfrivolous claims. He also does not demonstrate that he was otherwise injured or prejudiced by the alleged loss of his legal discs. For these reasons, Sanford fails to state a First Amendment claim as to his legal discs.

*(3) Disciplinary Reports*: Sanford claims that at least two false disciplinary reports were issued against him. First, he alleges Johnson issued a disciplinary report falsely stating that on July 15, 2019, Sanford had threatened to harm Johnson physically. (ECF No. 1 at PageID 10-11.) That report subsequently was dismissed. (*Id*.) Second, he contends Armour reported that Sanford "fail[ed] to report as scheduled" for work on October 1, 2018, even though he told her it was his day off. (*Id*. at PageID 13.) That charge also was dismissed. (*Id*. at PageID 14.) Sanford also alleges that on December 29, 2018, Defendant Jackson "falsely alleged [that] Plaintiff threatened her." (*Id*.) He does not allege whether a formal disciplinary charge was issued or, if so, the disposition of the charge.

A prisoner does not have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015)

(citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)).   While a prisoner has a due-process right to call witnesses on his behalf at a hearing, *Edwards v. Balisok*, 520 U.S. 641, 647 (1997), prisoners have no right to not to be charged with or convicted of prison disciplinary offenses.   *See also Wolff*, 418 U.S. at 564-71.   For these reasons, Sanford does not state a claim for relief as to "false" disciplinary reports by Johnson, Armour, and Jackson.

*(4) Retaliation*:   Sanford claims unconstitutional retaliation by several of the Defendants. First, he argues that Green and Armour, who supposedly share a familial in-law relationship, together worked "reprisal/retaliation" upon him in relation to the October 1, 2018, kitchen shift incident.   He claims they falsely alleged his failure to report for work.   (ECF No. 1 at PageID 13-14.)   Sanford also alleges that Defendants Armour, Colby, Green and Jackson exhibited "abusive, retaliatory, and unprofessional treatment."   (*Id*. at PageID 20.)   He contends that he "received retaliatory and unprofessional treatment from Colby and Jackson" when he returned to work on May 29, 2019.   (*Id*.)   Third, Sanford alleges Medina made him work "a tremendous amount of hours" in retaliation for Plaintiff's kitchen-work grievances.   (*Id*.)

The Court reviews prisoner retaliation claims under the First Amendment.   *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution.").   A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394.  "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.  "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Filing a grievance is protected conduct.  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Sanford offers generalized suggestions of the Defendants' grievance-related ill-will.  But he does not identify any causal connection between (1) his filing of the grievances and (2) adverse action that Green, Armour, Colby, Jackson, and/or Medina took against him as a result.  At most, Sanford suggests interpersonal discord.  (*See*, *e.g.*, ECF No. 1 at PageID 12 ("Green told Plaintiff to stop [walking away] because she was not finished talking yet.  Plaintiff asked, 'Why are you yelling at me? . . . I'm almost 50, I miss the message and shut down when people yell at me.'").)  For these reasons, Sanford fails to state a retaliation claim.

*(5) Claims concerning prison job conditions and scheduling*:  Sanford makes numerous allegations against various Defendants related to various conditions of his kitchen job and the scheduling of his shifts.  The claims can be addressed together, as none of them state a colorable claim for relief.  Sanford first contends that on December 29, 2018, Jackson "attempted to force Plaintiff to do something unsafe which was placing three milk creates [sic] of eggs in a 100g cooking pot."  (*Id*. at PageID 14.)  Jackson also allegedly retaliated against him for tardy breakfast production on January 4, 2019, by later replacing Sanford with another inmate worker.  (*Id*. at PageID 15.)  Medina then allegedly told Sanford on January 15, 2019, that the kitchen staffing list

11

"could not be adjusted" to give Plaintiff a shift, even though multiple other inmates were called to work during that time.  (*Id*. at PageID 15.)  However, Sanford also states that from February 26, 2019, to May 25, 2019, Medina compelled him to "work a tremendous amount of days and hours." (*Id*. at PageID 16.)

Sanford further contends that Colby and Jackson "unlawfully denied [him] work in the institutional kitchen" on May 25, 2019, and June 9, 2019, because of Sanford's "near altercation with an Inmate" the day before, even though the other inmate was allowed back to work the same day of the altercation.  (*Id*. at PageID 16.)  On June 18, 2019, Armour allegedly would not allow anyone to assist Sanford on the job, "forc[ing] him to cook and bake at the same time. . . . [which] is normally a two person job." (ECF No. 1 at PageID 17.)  He further contends Medina and Armour reassigned his work shifts in July 2019, purportedly because he "refused to food prep" during a shift.  Sanford argues that he could not access his inmate legal advisor or comply with legal deadlines because of these shift reassignments.  (*Id*. at PageID 17.)  Finally, Sanford claims that Green "resist[ed]" Sanford's "promot[ion] to Cook" and his work as a jailhouse lawyer.  (*Id*. at PageID 11.)

Prisoners such as Sanford have no Fourteenth Amendment property or liberty interest in a prison job; and the loss of a prison job or the ability to participate in rehabilitative or educational programs does not violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (". . . deprivations of this kind simply are not punishments.  We would have to wrench the Eighth Amendment from its language and history to hold that delay of these desirable aids to rehabilitation [such as job and educational opportunities] violates the Constitution."); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no property or liberty interest in

prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("It is well established that no prisoner has a constitutional right to a particular job or to any job.").  For these reasons, Sanford's allegations regarding the conditions and scheduling of his job fail to state colorable claims.  He had no constitutional right to on-the-job kitchen assistance, a certain number of job hours, accommodation of his preferred shift times, or prison job promotion.

One further point warrants mention with respect to Sanford's claims regarding his job conditions.  The Sixth Circuit has not directly addressed whether hazardous prison working conditions may state a plausible claim under the Eighth Amendment.  However, "other circuits have held that the Eighth Amendment is implicated when prisoners are forced to perform physical labor which is 'beyond their strength, endangers their lives, or causes undue pain.'"  *Rayburn v. Blue*, 154 F. Supp. 3d 523, 532 (W.D. Ky. 2015) (quoting *Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983)); *see Middlebrook v. Tennessee*, No. 07-2373, 2008 WL 2002521, at *11 (W.D. Tenn. May 6, 2008) (citing *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006)); *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991) (noting that "the intentional placing of prisoners in dangerous surroundings or the manifestation of deliberate indifference to their safety violates the Eighth Amendment").  Sanford makes no such contentions here.  While he alleges that Jackson's instructions regarding cooking eggs was dangerous, he does not explain that allegation and does not claim that his safety or health was endangered or that the work caused him pain.  Sanford's personal beliefs on food preparation safety do not amount to a claim of constitutional magnitude.  Additionally, his simultaneous arguments about numerous and lengthy shifts on the one hand, and denial of shifts on another, are not only meritless but also logically inconsistent.  For all of these reasons, he fails to state a claim on which relief may be granted.

*(6) Verbal abuse*:  Allegations of discord among Sanford and the Defendants are found throughout the complaint.  For example, Sanford contends Colby "began verbally abusing [another] Inmate and Plaintiff" and "became . . . angr[y] and us[ed] profanity" when Plaintiff stated that he was "not coming in [to work]" on June 13, 2019.  (ECF No. 1 at PageID 17.)  He also contends Green "unjustifiably verbally abus[ed]" him.  (*Id*. at PageID 12-13 (alleging "abusive, combative and unprofessional conduct").)  Sanford states that Jackson was "verbally abusive . . . and unprofessional" because of the lack of productivity by the breakfast shift.  (*Id*. at PageID 14 (alleging the reprimands were unfounded because "one of the cooking vessels was not working").)

However, harassment and verbal abuse, no matter how "shameful and utterly unprofessional," do not violate the Eighth Amendment.  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545–46 (6th Cir. 2004) (affirming dismissal for failure to state a claim where plaintiff's allegations included continuous insulting remarks by guard); *see also Morrison v. Greenwald*, No. 3:09-CV-009, 2010 WL 1253962, at *9 (S.D. Ohio Feb. 24, 2010) report and recommendation adopted, No. 3-:09-CV-009, 2010 WL 1253958 (S.D. Ohio Mar. 23, 2010) ("The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards.  Furthermore, Plaintiff suffered no injury from the insult.").  Even a guard's verbal threat of assault does not violate a prisoner's constitutional rights.  *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004).  Just as the Constitution "does not mandate comfortable prisons," *Wilson,* 501 U.S. at 298, it does not mandate polite prison guards or officials.  "Derogatory or abusive language and conduct do not give rise to a claim under § 1983." *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)).  Accordingly, Sanford's allegations of verbal insults do not state a claim under § 1983.

(7) *Denial and/or withholding of prison job pay*:  Sanford claims that Green and Medina wrongfully deprived him of pay for his prison job.  First, he states that Green, who was "in charge of Inmate pay for the HCCF kitchen," shorted his monthly "state-draw," his pay, over several months by at least 108 hours.  (ECF No. 1 at PageID 11, 18-19.)  Second, Sanford states Medina had agreed in writing to "accommodate and pay [him] when he needed access to the law library as long as he had a pass."  (*Id.* at PageID 18.)  However, Medina subsequently "den[ied] Plaintiff pay for leaving work for the law library."  (*Id.* also alleging that Colby, Green, Jackson, and Armour "annull[ed]" the agreement Medina had signed).)

"As the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates."  *Miller v. Campbell*, 108 F. Supp. 2d 960, 967 (W.D. Tenn. 2000) (citations omitted).  "Rather prison administrators may assign inmates jobs and wages at their discretion.  Plaintiff thus has no property or liberty interest in either a paying job in prison or in receiving payment at any particular rate or schedule."  *Id.* (internal citations omitted).  "Plaintiff's allegation that he was denied wages for a prison job does not amount to an allegation of the deprivation of a liberty interest. . . . As plaintiff has no property right in wages from a prison job, he has no claim for lost wages."  *Chapman v. Shelby Cnty.*, No. 05-2767, 2006 WL 1646089, at *3 (W.D. Tenn. June 14, 2006) (internal citations omitted).  *See also Countryman v. Nevada*, No. 10-00107-LRH (RAM), 2011 WL 3472539, at *4 (D. Nev. June 27, 2011) ("The Thirteenth Amendment's prohibition against involuntary servitude includes an exception for those duly convicted of a crime." (citing *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985))).  Given these governing principles, Sanford fails to state a claim for relief with respect to alleged denial or withholding of his prison kitchen job pay.

*(8) Failure to correct HCCF staff*:  Plaintiff contends that Medina never "corrected the . . . abusive and unprofessional conduct of Defendants Armour, Colby, Green, and Jackson."  (ECF No. 1 at PageID 18.)  He bases this on the Defendants' supposed "annul[ment]" of Medina's agreement to pay Sanford for kitchen work whenever he had a library pass; their reassignment of Sanford's work shifts; and their denial of kitchen assistance to Sanford.  (*Id.*)

Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted).  A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).  Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability.  *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Sanford alleges that Medina "allow[ed] his staff to harass Plaintiff for leaving work" to go to the law library even though Sanford continued to request that he be "return[ed] to his morning shift for everyone's convenience." (ECF No. 1 at PageID 18.)   But this contention does not demonstrate the requisite personal involvement by Medina in a deprivation of any constitutional right.   Rather, Sanford alleges, at most, Medina's failure to act.   This does not set forth a supervisory liability claim under § 1983.   *See Bellamy*, 729 F.2d at 421; *Grinter*, 532 F.3d at 575-76; *Gregory*, 444 F.3d at 751; *Shehee*, 199 F.3d at 300; *Lillard*, 76 F.3d at 727-28; *Simpson*, 79 F. App'x at 120.   It is well-settled that the doctrine of *respondeat superior* is only a basis for liability under § 1983 if there are allegations and proof of personal complicity.   *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658, 694 (1978).   That is not the case here.   For these reasons, Sanford fails to state a claim for relief as to supervisory liability.

*(9) Grievance process*:   Sanford alleges several deficiencies in HCCF's grievance process. First, he states that his "good faith grievance" against Green's "abusive and unprofessional behavior" was dismissed.   (ECF No. 1 at PageID 14.)   Second, in response to the grievance he filed about Jackson for "abusive and unprofessional treatment,"  Medina simply "stated he was tired of hearing about the abusive and unprofessional conduct of his staff."   (*Id.*)   Third, Medina, who handles food service-related grievances, wrongfully dismissed the four grievances that Sanford filed concerning retaliatory kitchen discipline and shift reassignments.   (*Id*. at PageID 18.) Fourth, he complains that he is prohibited from filing a grievance with SCCF about the 108-hour shortfall in his HCCF work-pay because he already has a shortfall grievance pending with HCCF. (*Id*. at PageID 19.)

Prisoners do not possess a constitutional right to a prison grievance procedure.   *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*,

3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim" because there is no inherent constitutional right to an effective prison grievance procedure.").  Even if a grievance system was constitutionally guaranteed, Sanford has not shown how any particular Defendant's conduct with respect to the internal grievance process directly affected his "ability to bring his claim before any court."  *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted).

(10) *Violations of TDOC policy and Tennessee Code*:  Sanford alleges that the Defendants violated several TDOC policies and sections of the Tennessee Code.  (ECF No. 1 at PageID 38.)  Specifically, he alleges violations of TDOC Policies 305.03(V), regarding interaction between inmates and TDOC employees;[1] 305.03(VI)(A), which governs workplace conduct by TDOC employees,[2] and 305.03(VI)(C), addressing conversational conduct between inmates and TDOC employees.[3]  Sanford contends the Defendants also violated Tennessee Code Annotated § 4-3-603

---

[1] "Interaction between employees and offenders shall be of a professional nature only. All offenders shall be treated equally in a non-discriminatory manner."  TDOC Administrative Policy & Procedure 305.03(V).

[2] "Employees shall conduct themselves in a professional manner when interacting with offenders.  When staff of the opposite gender enters an inmate housing unit, he/she shall announce his/her presence.  Each Warden/Superintendent shall ensure that this language is provided in the applicable post order governing inmate housing, living quarters, etc."  TDOC Policy & Procedure 305.03(VI)(A).

[3] "Conversation with offenders shall be respectful and limited to what is necessary as part of the employee's duties.  Inmate questions which cannot be answered shall be referred to the immediate supervisor.  Offenders shall be addressed by name, rather than TDOC numbers."  TDOC Administrative Policy & Procedure 305.03(VI)(C).

(governing TDOC Commissioner's duties),[4] § 4-3-606 (governing TDOC powers and duties),[5] and § 39-16-402 (proscribing official misconduct by public servants).[6]  Finally, he contends the Defendants violated TDOC Policy 502.06(V), concerning the provision of a safe and humane environment for inmates.[7]

An inmate's allegation that prison officials failed to follow TDOC administrative policies does not, in and of itself, rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).  After *Sandin v. Conner*, 515 U.S. 472, 484 (1995), it is even clearer that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause.  *See Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn.), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir. 1995)).  Section 1983 does not provide a remedy for violations of state laws or regulations.  *Lewellen v.*

---

[4] "The commissioner is the executive officer of the department of correction and has the immediate charge of the management and government of the institutions of the department, and the commissioner shall devote the commissioner's entire time and attention to the duties of the commissioner's position."  Tenn. Code Ann. § 4-3-603(a).

[5] "The department of correction shall exercise all the rights, powers and duties described in chapter 6 of this title and otherwise vested by law in the department, the commissioner, and the commissioner's officers, assistants and employees."  Tenn. Code Ann. § 4-3-606.

[6] "(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly: (1) Commits an act relating to the public servant's office or employment that constitutes an unauthorized exercise of official power; (2) Commits an act under color of office or employment that exceeds the public servant's official power . . . [or] (4) Violates a law relating to the public servant's office or employment.  (b) [A] public servant commits an act under color of office or employment who acts or purports to act in an official capacity or takes advantage of the actual or purported capacity."  Tenn. Code Ann. § 39-16-402.

[7] "It is the policy of the TDOC to provide a safe, humane, and appropriately secure environment, free from threat of sexual abuse and sexual harassment for all inmates, by maintaining a program of prevention, detection, response, investigation, and tracking of all alleged and substantiated sexual assaults and sexual harassment."  TDOC Policy & Procedure 305.03(VI)(C).

*Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). *See also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (the violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).

Accordingly, Sanford does not have a constitutional right to demand the Defendants' comply with any particular TDOC policy. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). And a plain reading of the complaint shows that Sanford's demand for relief under Tennessee Code Annotated §§ 4-3-603, 4-3-606, and 39-16-402 also warrants dismissal. Sanford does not allege any facts suggesting that either the TDOC Commissioner or the TDOC as an entity refuted the obligations under §§ 4-3-603 and 4-3-606. Moreover, a private citizen cannot bring criminal charges against another person via a civil lawsuit. While a citizen may make a complaint regarding suspected criminal conduct to the proper authorities, the choice to bring criminal charges pursuant to Tennessee law is left to the discretion of the appropriate District Attorney General. Sanford thus fails to state a claim for relief based on violations of TDOC policies and the Tennessee Code.

*(11) Transfer to a different prison*: Sanford suggests that he was wrongfully transferred from the HCCF to the SCCF on July 23, 2019, which allegedly interfered with the resolution of his grievance about the shortage in his pay at the HCCF. (ECF No. 1 at PageID 18-19.)

An inmate does not have a protected right to be assigned to a particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*,

427 U.S. 236 (1976); *Sandin*, 515 U.S. at 484-87.  Claims challenging placement procedures have no constitutional merit.  *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004).  This Court does not have the authority to supervise or alter housing assignment of inmates, such as Sanford seeks.  He thus does not state a claim for relief with regard to his transfer to the SCCF.

    *(12) Injunctive relief*:  To the extent that Sanford's request to "be free from all retaliatory acts, incidents, and treatments,"  (ECF No. 1 at PageID 39), can be construed as a claim for injunctive relief, it is without basis.  Because he is no longer at the HCCF, his request for injunctive relief against the Defendants is moot.  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (claim for declaratory or injunctive relief is rendered moot by the plaintiff's transfer to a different prison facility); *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison and prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

    *Opportunity to amend the complaint*:  The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded.").  Leave to amend is not required where a deficiency cannot be cured.  *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").  In this case, the Court concludes that Sanford should be given the opportunity to amend his complaint.

*Conclusion*:  The Court DISMISSES Sanford's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Leave to amend, however, is GRANTED.  Any amendment must be filed within twenty-one days after the date of this order, on or before **August 20, 2020**.

Sanford is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings.  The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each defendant sued in that count.  If Sanford fails to file an amended complaint within the time specified, the Court will dismiss the case with  prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE